In the Matter of Trenton Jacob KARY and Travis Paul Kary.

Georgene KARY and Ronald Hodge as Guardian ad Litem for Trenton Jacob Kary and Travis Paul Kary, Plaintiffs and Appellees,

v.

Jon BURGESS, Defendant and Appellant.

Civ. No. 10875.

Supreme Court of North Dakota.

Oct. 28, 1985.

Carma Christensen, Bismarck, for plaintiffs and appellees.

Mills & Moore, Bismarck, for defendant and appellant; argued by William R. Mills.

MESCHKE, Justice.

Twin boys were born on December 7, 1981, to Georgene Kary and Jon Burgess who lived together from 1973 through 1982. After they split, Georgene sued to establish paternity and for child support. Paternity was admitted. The trial court awarded $600 per month from February 1, 1983, for support of the twins, and ordered that Burgess maintain certain medical and hospital insurance coverage for the twins which currently costs $136 per month.

Burgess asserts on appeal that the findings of fact are not supported by the evidence, particularly as to his income and as to Kary's expenditures. He also argues that the trial court exceeded "guidelines" without adequate explanation and that his support obligation should not exceed "necessities."

■ An award of child support is a finding of fact which will not be set aside on appeal unless clearly erroneous. *C.B.D. v. W.E.B.*, 298 N.W.2d 493 (N.D.1980).

■ From his income tax returns, the trial court determined that Burgess had an average annual income of approximately $40,000 per year, primarily from an insurance agency. Kary had a current base income of $600 per month in a new job after over a year of unemployment, but expected to be able to earn about $1,500 per month through commissions. Her claimed expenses exceeded $2,600 per month, including $395 rent and $412 "child care when working." Burgess claimed expenditures exceeding $4,000 monthly, but the trial court found it "difficult ... to determine what, where and why many of the expenses are incurred." From our review of the record, we conclude that there was sufficient evidence to support the amounts awarded for support of the twins.

■ In 1983, the legislature called on the Department of Human Services to establish and publish a "scale of suggested minimum contributions to assist courts in determining the amount that a parent should be expected to contribute toward the support of the child." § 14–09–09.7(1), N.D.C.C. "The court shall consider the scale of suggested minimum contributions in making a determination of the amount of payment for child support." § 14–09–09.-7(3), N.D.C.C. While the trial court stated that it considered "statutory guidelines," Burgess complains that the guidelines were "ignored" in awarding more than the guidelines suggested without adequate explanation. This argument equates the guidelines to fixed or maximum amounts, rather than the "suggested minimum contributions" plainly contemplated by the legislature. Administrative discretion has not been substituted for judicial discretion.

■ Burgess argues that a natural father cannot be required to contribute more than "necessities" to the support of his natural child, although he acknowledges that a married parent can be expected to contribute more than just "necessities." Curiously, the argument even suggests, without citation of any supporting authority, that it is "invidious discrimination" against an unmarried father to make his support obligation equivalent to that of a married father.

■ Whatever ancestry this argument may have in more indifferent periods of the past,[1] cultural evolution has made it clear that this notion is an anachronism.[2] Today,

---

1. The early common law rule in this country, absent statute, apparently was that a father was not bound to support his illegitimate child. Annot: "Nonstatutory duty of father to support illegitimate child," 30 A.L.R. 1069 (1924). See generally 10 Am.Jur.2d, *Bastards*, §§ 8 and 68 (1963).

2. Nearly two decades ago, *In Re Estate of Jensen*, 162 N.W.2d 861, 869 (N.D.1968), indicated that this State would not "return to the unjust

a child of parents who are not married should receive the same impartial consideration from our courts as a child of married parents.

Circumstances of a child's birth bear "no relation to the individual's ability to participate in and contribute to society." *Mathews v. Lucas*, 427 U.S. 495, 505, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976). A child does not choose its parents and does not control their relationship. For such reasons, it is simply not tolerable today to treat a child differently because of circumstances of its birth. Under the equal protection clause of the Fourteenth Amendment to the United States Constitution, a State may not grant a legitimate child a judicially enforceable right to support from its natural father and at the same time deny that right to an illegitimate child. *Gomez v. Perez*, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973).[3]

Our statutes now provide: "The parent and child relationship extends equally to every child and to every parent, regardless of the marital status of the parents." § 14–17–02, N.D.C.C. "Parents must give their children support and education suitable to the child's circumstances." § 14–09–08 N.D.C.C.[4]

 "[T]he station in life, age, and occupations" of the natural parents of a child have long been appropriate considerations in determining the amount of support for the child in this State. *State v. Brunette*, 28 N.D. 539, 150 N.W. 271, 276 (1914). We have held that relevant factors to be considered in determining amounts to be paid for support of a child are the same for a child of a marriage as for a natural child. *State of Oregon ex rel. Krueger v. Krueger*, 292 N.W.2d 60 (N.D.1980). These factors include: "(a) the needs of the child; (b) the standard of living and circumstances of the parents; (c) the relative financial means of the parents; (d) the earning ability of the parents; (e) the need and capacity of the child for education, including higher education; (f) the age of the child; (g) the financial resources and the earning ability of the child; (h) the responsibility of the parents for the support of others; and (i) the value of services contributed by the custodial parent;" § 14–17–14(5), N.D.C.C. Thus, there is no error in the trial court having considered, among other factors, the financial means of Burgess to contribute more than "necessities" to the support of his twins.

We affirm the award of child support.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.

---

rule which visited the sins of the parents upon the unoffending offspring," in matters affecting children of parents who were not married.

**3.** There has been a stream of decisions by the United States Supreme Court rejecting invidious discrimination against illegitimate children. *Levy v. Louisiana*, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972) ("Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual—as well as an unjust—way of deterring the parent." 406 U.S. at 175, 92 S.Ct. at 1407); *Gomez v. Perez, supra; New Jersey Welfare Rights Organization v. Cahill*, 411 U.S. 619, 93 S.Ct. 1700, 36 L.Ed.2d 543 (1973); *Jimenez v. Weinberger*, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974); *Mathews v. Lucas, supra; Caban v. Mohammed*, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979); *Mills v. Habluetzel*, 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982).

**4.** As amended in 1985; S.L.1985 Ch. 196, § 1. Section 14–09–08 previously dealt only with support for legitimate children.

Until 1975, our statutes provided:
"The parents of a child born out of wedlock and not legitimated ... owe the child *necessary* maintenance, education and support." § 32–3601, Revised Code of 1943 (emphasis supplied).
*See State v. Coliton*, 73 N.D. 582, 17 N.W.2d 546 (N.D.1945). In 1975, § 32–36–01 was repealed (S.L.1975, Ch. 130, § 28) when the Uniform Parentage Act was adopted which contained § 14–07–02, N.D.C.C.