**Daryl D. JONES, Plaintiff and Appellant,**

v.

**Peggy L. JONES, Defendant and Appellee.**

No. 17070.

Supreme Court of South Dakota.

Submitted on Briefs Jan. 8, 1991.

Decided July 3, 1991.

Vicki L. Tucek, Rice & Ewinger Law Offices, Aberdeen, for plaintiff and appellant.

Gary L. Gellhaus, Aberdeen, for defendant and appellee.

HENDERSON, Justice.

### PROCEDURAL HISTORY/ISSUES

Daryl D. Jones (Daryl) appeals from an Order Modifying his Child Support Obligation entered on January 18, 1990.

On May 24, 1989, Daryl's child support obligation increased from $300.00 to $680.00 per month after Peggy L. Jones (Peggy), his ex-wife, petitioned the court for modification. On September 11, 1989, Daryl moved the trial court for an Order to

Show Cause, allowing him to modify his child support obligation pursuant to SDCL 25–7–6.13. A separate Order to Show Cause was served upon Daryl on September 14, 1989, by the State of South Dakota on behalf of Peggy to collect unpaid child support from Daryl's previous obligation. A hearing was held on October 12, 1989, to determine these issues. Daryl was held in contempt of court at this hearing. The hearing was then continued to November 8, 1989, to hear the modification issue. At the modification hearing, Daryl's support obligation was modified from $680.00 per month to $573.00 retroactive to the date his motion to reduce his child support obligation was filed. On appeal, Daryl presents three issues:

(1) Is unrequired, non-guaranteed, and speculative overtime pay includable as income in determining child support obligations?

(2) Did the trial court abuse its discretion by mathematically calculating child support over and above the maximum guideline amounts without entering specific findings as to the needs of the children and their standard of living?

(3) Did the trial court abuse its discretion in not deviating from the guidelines or allocating travel/visitation expenses to the father?

We affirm.

## FACTS

Daryl & Peggy are the divorced parents of two minor children. Daryl has been employed as a field service truck mechanic for Michigan Cat in Kalkaska, Michigan since June of 1986. Daryl is on call 24 hours a day. Sometimes he is on the road for six weeks at a time. He is guaranteed 40 hours of work per week at the rate of $15.71 per hour. Daryl works considerable overtime hours for which he is paid at 1.5 times normal pay. He has worked overtime for the past two years at 510 overtime hours per year or approximately ten hours overtime per week. This overtime has been very consistent over the years. Daryl's gross income, including overtime, was $34,374.18 as of September 23, 1989. His gross income for 1988 was $43,606.00. Daryl testified his projected gross income for 1989 would be $44,685.00.

For a year and a half prior to the modification hearing, Daryl had not visited his children. However, he had seen them two or three times in the past four years (two of which were during the two court hearings regarding this matter).

Peggy is a registered nurse at St. Luke's Hospital in Aberdeen, South Dakota, and works between sixty-six and seventy-two hours every two weeks at a rate of $13.56 per hour. Peggy has farm income of $255.00 per month. The combined income of both parties is $4,526.00 per month, Daryl having 56.4% of the total income and Peggy having 43.6% of the total income.

The guidelines of SDCL 25–7–6.2 provide that a combined income of $4,000.00 with two children obligates the parents in the amount of $987.00. By taking 20% of the amount that exceeds the $4,000.00 ($105.00) their joint obligation becomes $1,092.00. Therefore, the trial court determined Daryl's obligation to be 56.4% of $1,092.00 or $616.00 per month. However, the trial court determined that Daryl's support should be reduced by $43.00 per month in accordance with SDCL 25–7–6.10(3). The trial court further determined that Daryl is not entitled to a $50.00 per month deviation for travel expenses in order for him to exercise his rights of visitation, as he has not exercised much visitation or shown any interest therein.

## DECISION

I.  *The trial court did not abuse its discretion by including Daryl's overtime pay when setting his current child support obligation.*

█ It is settled law in South Dakota that this Court will not disturb an award of alimony or child support, or a division of property unless it clearly appears that the trial court abused its discretion. *Peterson v. Peterson*, 434 N.W.2d 732 (S.D.1989). Daryl argues the trial court abused its discretion by including his overtime pay in determining his support obligation, deem-

ing it unrequired, non-guaranteed and speculative.

This Court has addressed the "speculative overtime pay argument" on many occasions. *Tesch v. Tesch*, 399 N.W.2d 880 (S.D.1987); *Fossum v. Fossum*, 374 N.W.2d 100 (S.D.1985); *Hood v. Hood*, 335 N.W.2d 349 (S.D.1983); *Karim v. Karim*, 290 N.W.2d 479 (S.D.1980). These cases have expressed displeasure with the practice of basing child support amounts upon anticipated salary increases. However, we made a distinction in *Tesch* between consistent overtime pay and speculative overtime pay: "Clearly, overtime pay received for four consecutive years differs greatly from the disfavored anticipated salary increases...."

In *Reyna v. Reyna*, 78 Ill.App.3d 1010, 34 Ill.Dec. 818, 398 N.E.2d 641 (1979), the Court considered a father's overtime pay and income in determining his child support obligation:

> "According to his counsel, Mr. Reyna, makes an annual total of only slightly above $16,000.00 from his employment with the City of Moline. It is on the basis of these salary figures that the $948.00 monthly figure is calculated by counsel. Yet, the evidence presented to the Circuit Court indicated that in addition to the $16,000.00 from the city, Mr. Reyna also earned over $8,000.00 working construction in 1978. His annual income for 1978 was thus over $24,000.00. The evidence also indicated that in the first quarter of 1979, Reyna's city income was $5,386.00, which, if it were to continue would give him an annual income of $21,546.00. *While it may be true as Mr. Reyna indicated, that such income is uncertain to continue, the fact of its existence in the past is something which the court properly took into consideration.* If those sources of income do not continue to be available in the future, then Mr. Reyna, as the court below noted, may seek a modification of his maintenance and support obli-

gations." *Id.* 34 Ill.Dec. at 822, 398 N.E.2d at 645. (emphasis added)

In the present case, the trial court had ample evidence to determine that Daryl's overtime income was not speculative. It was determined that Daryl had consistently worked overtime for the past two years at 510 overtime hours per year or approximately 10 hours overtime per week. This finding reflects the very essence of Daryl's particular type of employment. Usually, a field service truck mechanic does not stop working at 5:00 p.m. His services might be needed at any hour of the day. By the nature of this type of employment, Daryl does not have a typical 9 to 5 job and overtime may even be considered a job requirement. Clearly, including Daryl's overtime income was not an abuse of discretion.

II. *The trial court did not abuse its discretion by mathematically calculating child support over and above the maximum guidelines without entering specific findings as to the needs of the children and their standard of living.*

Daryl argues that the lower court abused its discretion by not making specific findings as to his children's needs when calculating his support obligation. Once again, the standard of review on child support awards is whether the trial court abused its discretion in setting such award. *State of Kansas, ex rel. John W. Adams v. Donice Faye Adams*, 455 N.W.2d 227 (S.D.1990); *Guindon v. Guindon*, 256 N.W.2d 894 (S.D.1977). When a court is required to exercise discretion in setting a child support obligation, the court must consider the reasonable needs of the child and the obligor's ability to pay. *Havens v. Henning*, 418 N.W.2d 311 (S.D.1988).

Further, because the parties' combined income was $4,526.00 (which is above the guidelines set forth in SDCL 25-7-6.2), we look to SDCL 25-7-6.9 for guidance.[1] SDCL 25-7-6.9 explains the trial court's

---

1. This is a case of first impression, as this Court has never applied SDCL 25-7-6.9 to an issue such as this.

obligation in setting child support amounts when dealing with a combined net income above the child support schedule in SDCL 25–7–6.2. SDCL 25–7–6.9 states:

> For a combined net income above the schedule in § 25–7–6.2, the child support obligation shall be established at an *appropriate level*, taking into account the actual needs and standard of living of the child. (emphasis supplied).

■ In the present case, there is evidence of record regarding the children's needs. Peggy testified concerning the expenses in raising her children. Specifically, she testified that she must supplement her income by using vacation time because of the need for money to raise her family. She further testified that it is expensive to attend the children's out-of-town sporting events. Peggy met her burden of proof as to the needs of the children and their standard of living. Therefore, we find no abuse of discretion by the trial court. *Havens, supra.*[2]

III. *The trial court did not abuse its discretion by its refusal to allocate travel/visitation expenses to father.*

■ Daryl argues that the trial court abused its discretion in failing to deviate from the guidelines under SDCL 25–7–6.10(5) or allocate travel expenses pursuant to SDCL 25–7–6.15. However, the trial court did deviate from the guidelines by reducing Father's child support obligation by $43.00 per month.

In reference to Daryl's other argument, the record is clear that Daryl has not shown much interest in visiting his children. The trial court found:

> For the year and a half prior to this hearing, Plaintiff, Daryl Jones, had not been back for any visitation of the children and had visited them two or three times in the past four years, two of which were during the two Court hearings regarding this matter.

There was also testimony that Daryl had gone to Colorado fishing more times than he had visited his children. Based upon this record, the trial court did not abuse its discretion by refusing to allocate travel expenses to Daryl.

Affirmed.

MILLER, C.J., and WUEST, J., and HERTZ, Acting Justice, concur.

SABERS, J., concurs specially.

AMUNDSON, J., not having been a member of the court at the time this case was considered, did not participate.

SABERS, Justice (concurring specially).

I write specially to point out that the basis for affirming Issue II is contained within the guidelines themselves.

The child support obligation schedule at SDCL 25–7–6.2 only goes up to a combined monthly income of $4,000. Under this schedule, the parental child support obligation for two children on a $4,000 combined income is $987. The combined monthly income of Daryl and Peggy Jones is $4,526. To arrive at the additional child support obligation arising from the $526 by which the Jones' combined income exceeds $4,000, the court determined that 20% of the excess income, or $105, would constitute the child support portion. Daryl's share of this $105, based on his percentage of the combined monthly income, came to $59. Daryl's total monthly obligation for the support of his two children, including the $59, was found to be a modest $573, or $616 reduced by $43 for IRS deductions.

This was a properly considered decision. The trial court considered two specific deviations from the guidelines, rejected one and entered appropriate findings of fact for both. There is no third deviation present and no need for additional findings.

---

**2.** We do not examine this issue under SDCL 25–7–6.10 because this is not a situation where the trial court deviated from the schedule in SDCL 25–7–6.2. The factors under SDCL 25–7–6.10 must be considered with findings entered thereon when a party seeks deviation from the child support schedule. *See, Brooks v. Brooks,* 470 N.W.2d 827 (S.D.1991); *Johnson v. Johnson,* 468 N.W.2d 648 (S.D.1991); *Shoop v. Shoop,* 460 N.W.2d 721 (S.D.1990); *Nelson v. Nelson,* 454 N.W.2d 533 (S.D.1990).

The evident purpose of having a grid at SDCL 25–7–6.2 which sets forth precisely how much child support is owed at each income level is to prevent children from being deprived or one parent from being unfairly burdened while the other parent prolongs litigation in reliance on vague legal standards of "reasonable need" and "ability to pay." The trial court's decision is an extrapolation from the guidelines, not a deviation. To characterize the trial court's reasonable and consistent extrapolation from the schedule as a deviation requiring remand would defeat the whole purpose of the legislative scheme.

The guidelines implicitly include the reasonable needs of the children. We should hold that for incomes within the guidelines, need is presumed. For incomes above the guidelines, need should be presumed unless the non-custodial parent proves lack of need. The conference opinion invites needless litigation by failing to make this clear. Therefore, on the above basis, I agree that we should affirm in all respects.