**Allen R. BLOOM, Plaintiff and Appellee,**

**v.**

**Sylvia K. BLOOM, Defendant and Appellant.**

**No. 17852.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 8, 1992.

Decided March 31, 1993.

Leon J. Vander Linden of Delaney, Vander Linden & Delaney, Webster, for plaintiff and appellee.

Vicki L. Tucek, Aberdeen, for defendant and appellant.

WUEST, Justice.

Sylvia K. Bloom (mother) appeals a trial court order denying her motion for an increase in child support from Allen R. Bloom (father). We affirm.

## FACTS

Mother and father were married in 1971 and divorced in 1990. Three children were born during the marriage: two daughters, ages 16 and 13; and, a son, age 10. In a settlement agreement incorporated in the parties' divorce decree, father agreed that mother should have actual physical custody of the children and further agreed to pay child support in the amount of $1,000 per month for all three children. In addition, father agreed to maintain health insurance on the children and to "split" any medical bills not covered by insurance.

On October 23, 1991, mother filed a "Motion for Modification of Child Support." The hearing on the motion was conducted on November 13, 1991. Just before the hearing, father's counsel presented the trial court with father's affidavit in resistance to the motion. There is no record of any formal submission of the document, however, the affidavit is filed in the settled record.

During the modification hearing, mother's testimony was offered in support of her motion and mother also submitted two exhibits: an expense summary and a child support obligation worksheet. Father's counsel cross examined mother and, at the close of that phase, the following exchange took place:

THE COURT: [Counsel], I have another problem logistically. I have to go to Pierre tonight and I have to go to Marshall County yet this afternoon and take care of their problems. So we're running into time problems.

[FATHER'S COUNSEL]: Yes, Your Honor. Did you want me to quit or—

THE COURT: Well, I mean just get to the case and lets get down to the end.

[FATHER'S COUNSEL]: Right down to the nitty-gritty?

THE COURT: Right. I think basically it comes down to money now. What is there and so forth. I'm interested on your sheet, Exhibit Two [i.e. the child support worksheet]—

[FATHER'S COUNSEL]: Your Honor, before you start, let me just tell you what I was going to do and I take it you don't want me to do this.

THE COURT: Go ahead.

[FATHER'S COUNSEL]: Should we go off the record then?

THE COURT: Yes.

(Off the record discussion.)

THE COURT: Having reviewed everything it's the Order of the Court that everything stays status quo except I'll obligate him to pay for this hearing up to $300.00 for attorney's fees. Court's in recess.

On December 24, 1991, mother's counsel filed "Objections to Plaintiff's Affidavit," in which she objected to the trial court's consideration of the affidavit father filed on the day of the modification hearing. Counsel also objected to the trial court's consideration of an insurance document entitled, "Blue Cross and Blue Shield Estimate of Aware Gold Coverage for 1992." Counsel alleged she received the document

in the mail after the modification hearing with a notation by father's counsel that the information had been left with the judge. Counsel also filed a motion for reconsideration of the trial court's order denying modification, again challenging the trial court's consideration of father's affidavit and the Blue Cross coverage estimate. The trial court denied the motion for reconsideration in a decision entered December 24, 1991. On December 31, 1991, the trial court entered findings of fact, conclusions of law and an order denying mother's motion for modification of child support. Mother appeals.

### ISSUE ONE

WHETHER THE TRIAL COURT ERRED IN CONSIDERING IMPROPERLY SUBMITTED EVIDENCE AND IN DENYING MOTHER'S COUNSEL THE OPPORTUNITY TO CROSS EXAMINE FATHER?

■ Mother asserts that she is entitled to a new child support modification hearing or reconsideration of her motion for modification of child support because: the trial court improperly considered the Blue Cross coverage estimate informally submitted by father after the modification hearing; the trial court improperly considered father's affidavit which was untimely served on the day of the hearing; and, the trial court denied mother the opportunity to cross examine father on the information supplied in his affidavit.

We find no Blue Cross coverage estimate in the record appearing to constitute the document allegedly submitted to the trial court after the hearing. Nor do we find any findings of fact premised on such a document. Thus, even if the trial court did improperly receive such information from father's counsel after the hearing, mother can claim no prejudicial error in that action. *See, Matter of R.S.S.*, 474 N.W.2d 743 (S.D. 1991) (in action tried to court, improper admission of evidence is nonprejudicial absent reference in trial court's findings indicating consideration of inadmissible evidence). *See also, Koupal & Anton, Inc. v. Wieczorek*, 375 N.W.2d 639 (S.D.1985) (to be prejudicial, errors must produce some

effect upon the final result and affect rights of party assigning it).

Certain information in the trial court's findings does rely on father's affidavit. The findings note that, in addition to his $1,000 per month child support, father pays $700 per month for a college fund for the children that is funded by life insurance, $381 per month for the children's health insurance and $200 a month for disability insurance.

Generally, we have held that: " '[a]ffidavits are unsatisfactory as forms of evidence; they are not subject to cross-examination, combine facts and conclusions and, unintentionally or sometimes even intentionally, may omit important facts or give a distorted picture of them.' Affidavits, although made under oath, are ordinarily not considered competent evidence." *Dixon v. Dixon*, 423 N.W.2d 507, 510 (S.D.1988) (citations omitted). Nevertheless, we have left the ultimate determination of whether issues of fact should be resolved by affidavit in the sound discretion of the trial courts:

> SDCL 15–6–43(e) provides that "[w]hen a motion is based on facts not appearing of record the court *may* hear the matter on affidavits presented by the respective parties, but the court *may* direct that the matter be heard wholly or partly on oral testimony or depositions." (Emphasis added.) Thus, admitting depositions or oral testimony, in addition to affidavits, rests within the trial court's discretion. Every party, as a matter of right, is not entitled to oral testimony on every motion or on every issue of fact. Obviously, there are many cases where no oral testimony need be received and the trial court, in the exercise of sound discretion, may permit the trial of an issue of fact, involved in the motion, on non-oral testimony. However, the trial court in exercising this discretion must be cautious to prevent a circumvention of justice.

*Dixon*, 423 N.W.2d at 510 (citations omitted).

*Dixon* was an appeal of a judgment denying a request for a reduction of child support and increasing the obligor's child

support obligation. No hearing was held in the matter and all issues were resolved on the basis of multiple affidavits filed in the record. As to the propriety of resolution of the child support issues on the basis of affidavits, we held:

> As stated in [*Saturnini v. Saturnini,* 260 Minn. 494, 110 N.W.2d 480 (1961)], modification of support issues, which generally involve a showing of change in need or ability to pay, may properly be heard by affidavit. *See also* SDCL 15–6–43(e). . . .
>
> Here, the non-oral testimony supports the findings, conclusions, and order of the trial court regarding these issues. We do not find them to be clearly erroneous or an abuse of discretion.

*Dixon,* 423 N.W.2d at 512 (citations omitted).

■ Here, father's affidavit supports the trial court's findings of fact concerning his extra-support expenditures on behalf of the children and mother raises no contention that these findings are clearly erroneous. With regard to mother's lack of opportunity to cross-examine father on the affidavit, *Dixon* also provides in pertinent part:

> Modification of support payments, on the other hand, generally requires only a showing of change in either need on the one side or ability to pay on the other. In most situations these determinations can fairly be made without taking oral testimony. *Where the facts are complicated or the affidavits so conflicting as to render cross-examination essential,* then the desirability of expeditious procedure must give way to a more formal hearing.

*Dixon,* 423 N.W.2d at 511 (quoting *Saturnini, supra*) (emphasis added). In this instance, the facts are relatively uncomplicated and a responsive affidavit filed by mother raises no particular conflict with the facts asserted in father's affidavit concerning his monthly child support obligation and extra-support expenditures on behalf of the children. Thus, we find no prejudicial error in mother's lack of opportunity to cross-examine father on his affidavit, particularly in view of her failure to raise any objection on the issue during the hearing on this matter.

Finally, as to the service of father's affidavit on the day of the hearing, as stated in *Schy v. Susquehanna Corporation,* 419 F.2d 1112, 1116 (7th Cir.1970):

> The plaintiff next complains that the district court erroneously considered affidavits and exhibits filed on the day of the hearing in violation of rule 6(d) [*], Federal Rules of Civil Procedure. The plaintiff did not complain of untimeliness in the trial court, although he did urge the court not to consider the exhibits as evidence. Since the plaintiff did not complain about the late filing in the trial court, he cannot do so on appeal (footnote added).

Mother raised no objection to the timeliness of father's affidavit during the hearing on this matter. Rather, she waited until well over a month after the hearing and issuance of the trial court's decision from the bench to raise her first objection on the issue. As in *Schy, supra,* she will not now be heard to complain on the timeliness question. *See also, Ver Steegh v. Flaugh,* 251 Iowa 1011, 103 N.W.2d 718 (1960) (for objection to be timely, it must ordinarily be made at the earliest opportunity after the ground of objection becomes apparent). *Accord, Matter of Adoption of Baade,* 462 N.W.2d 485 (S.D.1990) (error must be brought to attention of trial court as soon as it is apparent).

## ISSUES TWO AND THREE

WHETHER THE TRIAL COURT ERRED IN FAILING TO CALCULATE FATHER'S CHILD SUPPORT OBLIGATION ACCORDING TO THE CHILD SUPPORT SCHEDULES AND IN FAILING TO TAKE INTO CONSIDERATION THE ACTUAL NEEDS AND STANDARD OF LIVING OF THE CHILDREN?

■ Under both her second and third issues, mother contests the trial court's

---

[*] Fed.R.Civ.P. 6(d) is virtually identical to SDCL 15–6–6(d) which requires opposing affidavits to be served not later than one day before the hearing on a motion.

failure to calculate father's child support obligation according to the statutory schedules and its purported failure to take into consideration the actual needs and standard of living of the children as required under SDCL 25–7–6.9.

Mother argues that current child support must be based upon the child support schedules at SDCL 25–7–6.2 and that any deviation from the amount required by the schedules must be based on the factors listed in SDCL 25–7–6.10. She asserts that the trial court failed to set child support according to the schedules and failed to base its deviation from the schedules on any of the factors in SDCL 25–7–6.10. Accordingly, mother contends the trial court erred as a matter of law in refusing to modify father's child support obligation.

Mother is generally correct in her assertion that child support must be based on the schedules in SDCL 25–7–6.2 and that *any* deviation from the schedules must be based on the factors in SDCL 25–7–6.10. *Johnson v. Johnson,* 451 N.W.2d 293 (S.D. 1990). However, there appears to be no dispute between the parties over the fact that their combined net monthly income exceeds the maximum amount contemplated by the schedules (i.e., $4,000 per month).

SDCL 25–7–6.9 provides that, "[f]or a combined net income above the schedule in § 25–7–6.2, the child support obligation shall be established at an appropriate level, taking into account the actual needs and standard of living of the child." In *Earley v. Earley,* 484 N.W.2d 125 (S.D.1992), the issue was whether the trial court abused its discretion by failing to mathematically extrapolate the parties' child support obligation from the schedules where the parties' combined net monthly income exceeded the maximum amount in the schedules. This is essentially the same argument mother advances in the present case. We held that:

> Under SDCL 25–7–6.9, the court must take into account the actual needs and standard of living of the children. *Jones v. Jones,* 472 N.W.2d 782, 785 n. 2 (S.D. 1991). *Jones,* held that the trial court did not abuse its discretion by mathemat-

ically calculating child support above the maximum guidelines even without entering specific findings as to the needs of the children and their standard of living. However, proof of actual needs and standard of living of the children existed.

\* \* \* \* \* \*

> After considering these matters, the court set the total child support obligation at the maximum guideline amount for three children. Although the appropriate level of child support may be higher, it does not appear from the record that the trial court abused its discretion considering the proof of actual needs.

*Earley,* 484 N.W.2d at 127–128 (citations omitted). Thus, *Earley* yields the rule that for parties with a combined net monthly income above the amount contemplated in the child support schedules, the trial court *may* calculate support by mathematical extrapolation, but it is not obligated to do so. Rather, the essential inquiry remains the actual needs and standard of living of the children.

■ Here, as in *Jones, supra,* the trial court failed to enter specific findings as to the needs of the children and their standard of living. However, also as in *Jones,* proof of actual needs and standard of living existed. During the modification hearing, mother submitted a detailed list of her monthly expenses in maintenance of the household and children. Father's affidavit and attachments supplied information on his financial status. Moreover, the trial court did specifically find that, "the children of the parties are receiving an appropriate level of child support from [father] and the actual needs and standards of living are in compliance with SDCL 25–7–6.9." The trial court further found that, "[father] is presently paying a fair support to [mother] and this support adequately cares for the children of the parties." These determinations were made after the findings that father is paying $1,000 per month in child support, $700 per month for a college fund for the children, $381 per month for their health insurance, and $200 per month for disability insurance, all of which benefits the children.

Mother's evidence did assert the children had some enhanced needs due to their advancing ages and participation in various activities. However, her request for an increase in child support was substantially premised on asserted "needs" such as: $500 per month for the children's clothing; $2,000 for a full sized cello for the oldest daughter to continue cello lessons; travel expenses for the second oldest daughter's participation in school sports; the second oldest daughter's need for more advanced instruction in dance and ballet; and, the children's participation in a language camp in Minnesota. In addition, mother raised complaints over the daughters having to share a room and the fact the wiring in their home was inadequate and would not permit use of more than one curling iron or blow dryer at a time.

While father's income and status as a physician might establish that the above items are commensurate with the children's standard of living, we are not prepared to state that the trial court abused its discretion in failing to enter such a finding or a finding that these items constitute actual needs of the children. We reach this conclusion taking particular note of father's unrequired expenditure of $700 per month to establish a college fund for the children. Certainly, the children's interest in a college education outweighs any asserted "need" for designer clothes, cellos, ballet lessons and language camps.

Based upon the above analysis, we find no abuse of discretion in the trial court's denial of mother's motion for an increase in child support.

## ISSUES FOUR AND FIVE

WHETHER THE MONTHLY LIFE, HEALTH AND DISABILITY INSURANCE PAYMENTS MADE BY FATHER ARE A FORM OF CHILD SUPPORT PROPERLY OFFSET AGAINST HIS MONTHLY CHILD SUPPORT OBLIGATION?

Mother argues the monthly sums expended by father for life, health and disability insurance were erroneously considered as a form of child support by the trial court and, therefore, the trial court erred in offsetting those amounts against father's child support obligation. Mother further contends that these expenditures are not recognized as appropriate factors for deviation from the child support schedules under SDCL 25–7–6.10.

Mother's argument ignores that the monthly payments outlined above were neither used as an offset against, nor as a basis for deviation from, father's monthly child support obligation. Rather, taking into consideration the actual needs and standard of living of the children, the trial court determined father's $1,000 per month child support payments constituted an appropriate level of support. There was no offset against, or deviation from, the $1,000 per month figure. The trial court merely considered the monthly insurance payments as factors in reviewing the actual needs and standard of living of the children. This is no different than the retirement plan and health insurance costs taken into consideration by the trial court in *Earley, supra.*

Moreover, in *Jones, supra,* the parents combined net monthly income also exceeded the maximum amount contemplated by the child support schedules. In determining whether the trial court abused its discretion in calculating the amount of support, this court specifically noted that, "[w]e do not examine this issue under SDCL 25–7–6.10 because this is not a situation where the trial court deviated from the schedule in SDCL 25–7–6.2. The factors under SDCL 25–7–6.10 must be considered with findings entered thereon *when a party seeks deviation from the child support schedule.*" *Jones,* 472 N.W.2d at 785 n. 2 (emphasis added). The same is true in the instant case. Child support was computed based upon the actual needs and standard of living of the children as required by SDCL 25–7–6.9, *not* based upon the schedules in SDCL 25–7–6.2. Thus, the amount of support established by the trial court reflects no offset against, or deviation from, an amount required by the child support schedules.

Affirmed.

AMUNDSON, J., concurs.

HENDERSON, J., concurs specially.

MILLER, C.J., and SABERS, J., dissent.

HENDERSON, Justice (specially concurring).

Is the rule of law clear and it's application plain? Or the rule of law uncertain and the application alone doubtful?

### ISSUE ONE

Rule of law is clear and its application is plain. *See, Saturnini* and *Dixon* cited in majority opinion.

### ISSUES TWO AND THREE

Per these decisions (stare decisis), trial court did not abuse its discretion in denying an increase of child support: *State of Kansas, ex rel. Adams v. Adams,* 455 N.W.2d 227 (S.D.1990); *Peterson v. Peterson,* 434 N.W.2d 732, 734 (S.D.1989); *Havens v. Henning,* 418 N.W.2d 311 (S.D.1988); *Guindon v. Guindon,* 256 N.W.2d 894 (S.D.1977). *See also,* statutes cited in my special writing in *Earley v. Earley,* 484 N.W.2d 125, 130 (S.D.1992) (Henderson, J., concurring in part; dissenting in part), specifically SDCL 25–7–6.10(2) wherein a circuit judge may consider "Any financial condition of either parent which would make application of the schedule inequitable." Here, additionally, trial court considered SDCL 25–7–6.2 by establishing the child support obligation at an "appropriate level" after "taking into account the actual needs and standard of living of the child." *See,* SDCL 25–7–6.9 for discretionary power vested where there is combined net income above the schedule set forth in SDCL 25–7–6.2. Designer clothes? Language camps? These are actual needs? Rule of law is certain and its application is plain to apply the facts. No abuse of discretion. Trial courts should be allowed to exercise their discretion. We should not turn a trial judge into a legal robot or automaton. *Nelson v. Nelson,* 454 N.W.2d 533, 538 (S.D.1990) (Henderson, J., concurring in result).

### ISSUES FOUR AND FIVE

Concur. I would stand by precedent. *See, Earley* at 127–128. The circuit judge must take into account the actual needs and standard of living of the children and does not have to mathematically extrapolate from the guidelines. *Earley* cited to *Peterson* and *Havens,* on the proper standard of review: Did the trial court abuse its discretion in setting the award? Clearly, there is no abuse of discretion and we should apply our settled law to the facts at hand.

MILLER, Chief Justice (dissenting).

As the colloquy quoted in the majority writing establishes, the parties were not given a full and fair hearing. Rather, it was rushed and shortcutted because of the trial judge's concern and preoccupation with his travel schedule. Further, it would appear, at least to this justice, that crucial issues were raised and resolved during the "off-the-record discussion." In addition to evidencing inadequate due process to the parties, such a procedure hampers meaningful appellate review. Even though the trial court did again review certain issues via the motion for reconsideration, in my view that is too little, too late.

I would remand. I suggest that the litigants in this action are entitled to no less.

I am authorized to state that Justice SABERS joins in this dissent.