**Kristi J. OCHS, Plaintiff and Appellee,**

v.

**Robert Jason NELSON, Defendant and Appellant.**

No. 18935.

Supreme Court of South Dakota.

Considered on Briefs May 23, 1995.

Reassigned Aug. 8, 1995.

Decided Oct. 11, 1995.

Rehearing Denied Nov. 15, 1995.

Lee R. Burd, Sioux Falls, for plaintiff and appellee.

John E. Burke, Sioux Falls, for defendant and appellant.

KONENKAMP, Justice (on reassignment).

In this paternity action, Robert Nelson appeals the trial court's calculation and award of child support to Kristi Ochs for the benefit of their minor son, Christopher Ochs. We affirm.

## FACTS

Christopher was born on January 21, 1992. Although the parents were never married, Robert acknowledged paternity and declared his intent to take an active role in his son's life. By agreement Christopher's custody remained with Kristi, subject to Robert's liberal and frequent visitation. Robert paid all medical expenses associated with Christopher's birth, as well as Kristi's lost income from work due to the pregnancy. He also paid for the child's health insurance and daycare. Shortly after the birth, he began sending $400 per month in child support, later increasing his monthly payment to $600. On July 9, 1992, Kristi commenced an action to legally establish Robert's paternity and support obligations.

Robert is employed by and owns a controlling eighty percent interest in a closely held magazine publishing business known as Deals on Wheels, Inc., a "C" corporation. His brother owns the remaining twenty percent. Over the past three years, Robert's average annual personal income, taken as salary, was $62,345, after deductions for federal income tax, Medicare and FICA. For the corporation the average yearly net income over the last three years was $116,905, of which $93,524 was imputed to Robert reflecting his eighty percent interest. The corporation paid no dividends, however, choosing instead to hold its profits, so that by 1993 it had accumulated retained earnings exceeding one-half million dollars.

Kristi works for Midwest Office Systems averaging $12,681 per year for the last two years. In its findings of fact and conclusions of law the trial court recognized that Christo-

pher's "standard of living has been dictated by the marginal earnings of his mother rather than the far more substantial earnings of his father." The court found:

[Kristi] and the minor child live in a modest apartment with the child being transported in an older car. [Kristi] presented a budget of minimal monthly expenses which totalled $1,705. Her budget did not include provisions for a vehicle payment, life insurance, savings, good quality clothing, eating out, a residential home, vacations, or enriching opportunities for the minor child, all items which [Kristi] desires to provide for the child.

In contrast, Robert owns a quality home in a fashionable area of Sioux Falls to which he has made substantial improvements in the past few years. He owns a vacation cabin in the Black Hills, travels extensively as part of his business, provides financial assistance to his parents, owns late model automobiles, has substantial life insurance, and supports his former wife and two children who currently live with him. Finding Robert financially "able to provide substantial support for the minor child commensurate with his standard of living," the court considered Robert's personal income and imputed earnings from Deals on Wheels, to set his child support at $1,456 per month. This calculation was based on mathematical extrapolation from the child support guidelines. SDCL 25–7–6.9. Robert was additionally obligated to continue paying $288 per month for daycare. Lastly, after considering the amounts he had paid voluntarily, the trial court ordered Robert to pay $20,000 in retroactive child support dated from the commencement of this action.

Robert raises three issues on appeal; we discuss the following two:

I. **MAY RETAINED EARNINGS FROM A CLOSELY HELD CORPORATION BE CONSIDERED IN DETERMINING CHILD SUPPORT WHEN A PARENT OWNS A CONTROLLING EIGHTY PERCENT OF THE CORPORATE STOCK?**

II. **MAY A TRIAL COURT EXCEED THE CHILD SUPPORT GUIDE-**

LINES WITHOUT SHOWING SPE-
CIAL NEEDS FOR THE CHILD?

## STANDARD OF REVIEW

 We will not disturb a child support award unless the trial court clearly abused its discretion. *Steffens v. Peterson*, 503 N.W.2d 254, 257 (S.D.1993). Whether we would have made the same decision is not a consideration. The question is, could a judicial mind, in view of the law and the circumstances of the particular case, reasonably have reached such a conclusion. *Havens v. Henning*, 418 N.W.2d 311, 312 (S.D.1988).

## ANALYSIS

### I. Corporate Retained Earnings

 Robert contends only personal income, not corporate retained earnings, should be considered as income for child support purposes. Nonetheless, SDCL 25–7-6.6 undoubtedly includes a company's retained earnings in defining income:

> Gross income from a business, profession, farming, rentals, royalties, estates, trusts or other sources, are the *net profits or gain,* or net losses *shown on any or all schedules* filed as part of the parents' federal income tax returns or *as part of any federal income tax returns for any business with which he is associated,* except that the court may allow or disallow deductions for federal income taxation purposes which do not require the expenditure of cash, including, but not limited to, depreciation or depletion allowances, and may further consider the extent to which household expenses, automobile expenses, and related items are deductible or partially deductible for income tax purposes. In the event a court disallows depreciation, it may consider necessary capital expenditures which enhance the parent's current income for child support purposes. (Emphasis added.)

The trial court explicitly followed this statute in calculating an award. *See also* SDCL 25–7-6.3(2). Statutes are construed according to their "plain meaning." *Chiolis v. Lage Development Co.,* 512 N.W.2d 158, 160 (S.D. 1994).

An accountant testified that retained earnings will not translate into an equivalent amount of cash and the company needs these earnings to maintain growth. The company's banker verified that due to company debt, it had agreed not to draw out its retained earnings. On the other hand, Robert borrowed $79,600 from the company, for which there had been no repayment made in over three years. These conflicting matters were factual issues for the trial court to unravel. Robert fails to show why retained earnings from a closely held corporation do not fall within the ambit of this statute. Other jurisdictions have similarly found it appropriate to consider corporate retained earnings as income for the purposes of calculating child support. *See Merrill v. Merrill,* 587 N.E.2d 188 (Ind.App. 3 Dist.1992); *Boudreau v. Benitz,* 827 S.W.2d 732 (Mo.App.1992); *Com. ex rel. Maier v. Maier,* 274 Pa.Super. 580, 418 A.2d 558 (1980); *Hertz v. Hertz,* 304 Minn. 144, 229 N.W.2d 42 (1975).

In computing Deals on Wheels' retained earnings as part of Robert's income, the court took the corporation's after tax income over three years and reduced that number to his eighty percent ownership share ($357,717 x .80 = $280,573).[1] To arrive at an average yearly income, the $280,573 was divided by three, equaling $93,524. The trial court then discounted Robert's allotment by fifty percent, reckoning the company's need for financial liquidity and Robert's personal income tax liability, if he withdrew the money. The result was $46,762, which was added to his $62,345 salary, making his average yearly net income $109,107. We conclude the trial court did not abuse its discretion in calculating Robert's income by adding his salary, under SDCL 25–7-6.3, and one-half his eighty percent interest in the company's average yearly retained earnings pursuant to SDCL 25–7-6.6.

---

1. This net profit was arrived at after deducting all business expenses, salaries, and depreciation. The court did not add back in deductions for depreciation, although it had the discretion to do so. SDCL 25–7-6.6.

## II. Child Support—Needs and Standard of Living

■ Adding Kristi's average annual income of $12,681 to Robert's $109,107 per annum resulted in a combined yearly total of $121,788, and a monthly net total of $10,149. This joint income number far exceeded the maximum level listed on the schedule found in SDCL 25–7–6.2. To arrive at the parents' joint support obligation, the trial court made a purely mathematical extrapolation from the guidelines.[2] *See Bloom v. Bloom*, 498 N.W.2d 213, 217 (S.D.1993); *Steffens*, 503 N.W.2d at 258. Based on this calculation, the court set Robert's support obligation at $1,456, plus daycare ($288), less his share of the child's health insurance premium ($11), for a total monthly support amount of $1,733.[3]

Robert argues child support guidelines cannot be exceeded "absent any showing of special needs of a child in good health." On the contrary, we have held that extrapolation beyond the maximum guideline level is permissible, but not obligatory, when the parents' joint income exceeds the guidelines. *See Steffens*, 503 N.W.2d at 258; *Bloom*, 498 N.W.2d at 217; *Earley v. Earley*, 484 N.W.2d 125, 128 (S.D.1992), cert. denied, 506 U.S. ——, 113 S.Ct. 272, 121 L.Ed.2d 200 (1992); *Jones v. Jones*, 472 N.W.2d 782, 785 (S.D.1991). SDCL 25–7–6.9 provides guidance in such situations: "For a combined net income above the schedule in § 25–7–6.2, the child support obligation shall be established at an appropriate level, *taking into account the actual needs and standard of living of the child.*" (Emphasis added.) In *Jones*, this Court stated that a party requesting an upward adjustment above the guidelines has the burden of proving the child's needs and

standard of living. 472 N.W.2d at 785. There, an upward adjustment was proper because the children's needs were not being met.

> [Mother] testified concerning the expenses in raising her children. Specifically, she testified that she must supplement her income by using vacation time because of the need for money to raise her family. She further testified that it is expensive to attend the children's out-of-town sporting events. [Mother] met her burden of proof as to the needs of the children and their standard of living.

*Id.*

Yet a child's necessities are not the only consideration. "[T]he essential inquiry remains the actual needs *and* standard of living of the children." *Bloom*, 498 N.W.2d at 217 (citations omitted) (emphasis added). The trial court's findings of fact reflect both parents' standards of living and Christopher's needs. The court noted Kristi drove a ten-year-old car with mechanical problems. Among other things she used the car to drive Christopher to and from daycare. Kristi also carried credit card debt; she was able to afford only a small life insurance policy through work, with Christopher as the beneficiary; she would like to have funds for Christopher to attend preschool when he is older; and she wanted money to provide him with music lessons in later years. Robert points out that Kristi's testimony and the trial court's findings of fact are peculiarly without recognition of Christopher's particular needs; rather they include Kristi's needs,

---

2. $637 x 2.54 = 1,618 x .90 = $1,456.

3.

| | Father | Mother | Total |
|---|---|---|---|
| Annual Net Income | 109,107 | 12,681 | 121,788 |
| Monthly Net Income | 9,092 | 1,057 | 10,149 |
| Percent of Net | 90% | 10% | 100% |
| Base Support Amt. | 1,456 | 162 | 1,618 |
| Child's Health Ins. | −11 | | 108 |
| Day Care | 288 | | 320 |
| Total Support | 1,733 | | 2,046 |

such as a "vehicle payment," "eating out," "vacations," and "life insurance" all as part of Kristi's "desires to provide for the child." What Robert finds especially troublesome is that the court's child support award exceeded Kristi's monthly budget.

The crux of the issue involves defining Christopher's standard of living, which the trial court found was in the past dictated by Kristi's earnings. These parents never lived together, nor has Christopher lived with his father. Obviously, in divorce cases a child's standard of living reflects the parents' standard of living before they separated. Standard of living remains an important factor after a divorce. "This state has an interest in protecting the welfare of its children which includes their standard of living." *Feltman v. Feltman*, 434 N.W.2d 590, 592 (S.D.1989). All too often in setting child support, "[t]here are simply too few dollars to meet even the most modest standard of living ... [and judges] are called upon to apportion poverty and its accompanying misery...." *State ex rel. V.K.H. v. S.W.*, 442 N.W.2d 920, 925 (S.D.1989) (Gilbertson, Circuit Judge, concurring). If children must endure their parents' poverty, should they not also share their affluence? We have previously recognized a child's interest in a parent's well-to-do standard of living. In *Saint–Pierre v. Saint–Pierre*, 357 N.W.2d 250, 259 (S.D.1984), the mother had "a demonstrated ability to earn a substantial income from her medical practice." Although the *Saint–Pierre* children were young, they were permitted to continue in a standard of living their mother's income provided in the past when the parents lived together. *Id.* (citing *Wallahan v. Wallahan*, 284 N.W.2d 21 (S.D.1979)).

Whether Christopher ever lived with his father is immaterial. "Today, a child of parents who are not married should receive the same impartial consideration from our courts as a child of married parents." *Matter of Kary*, 376 N.W.2d 320, 321–22 (N.D.1985) (standard of living of father of illegitimate child proper consideration in award of child support exceeding guidelines). Simply be-

cause Christopher was born out of wedlock, should not mean he will receive only necessities from a father who can provide more. "A child does not choose its parents and does not control their relationship. For such reasons, it is simply not tolerable today to treat a child differently because of circumstances of its birth." *Id.* We are not suggesting that Christopher's father has treated him inadequately. The record clearly shows he has always been a loving and generous parent, though he would prefer to bestow his generosity voluntarily. Nonetheless, the trial court had the discretion to adjust support so that Christopher could partake in some of his father's high standard of living while he is with his mother. If Kristi misapplies the child support for expenditures unrelated to Christopher's needs and standard of living, as Robert fears, the trial court maintains jurisdiction to modify its support order as necessary. SDCL 25–8–7; *State v. Cool*, 511 N.W.2d 829 (S.D.1994). The question here is whether the court clearly abused its discretion in setting the present amount. We hold it did not and sustain the award.

We have considered Robert's other assignments of error and find them to lack sufficient merit for discussion. Based upon the applicable factors, we award Kristi $1,000 in attorney fees in this appeal. *Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D.1985).

Affirmed.

MILLER, C.J., and SABERS and GILBERTSON, JJ., concur.

AMUNDSON, J., concurs in part and dissents in part.

AMUNDSON, Justice (concurring in part and dissenting in part).

On Issue II, it is unclear whether the court considered Christopher's actual needs, or Mother's wants and desires, in making its determination.[*] The trial court's findings of

---

[*] The trial court's findings of fact emphasized:

10. Plaintiff and the minor child live in a modest apartment with the child being transported in an older car. Plaintiff presented a budget of minimal monthly expenses which totalled $1,705. Her budget did not include provisions for a vehicle payment, life insur-

fact are replete with concerns for Mother's needs instead of Christopher's. The crux of the issue is Christopher's standard of living, which the trial court found to be dictated by Mother's earnings. These parties never lived together, nor has Christopher lived with his Father. Yet the trial court thought it was appropriate to multiply the guideline amount of $637 by 254%.

Although we agree that Father's standard of living must be considered in making a determination, SDCL 25–7–6.9 requires the final award to be set at an "appropriate level, taking into account the *actual needs and standard of living of the child.*" (Emphasis added.) The explicit language and goal of this statute is to meet Christopher's needs and standard of living, not Mother's needs nor Father's standard of living. Mother's testimony reiterates her own desires for a standard of living commensurate with Father. An excerpt of her testimony on her budget is as follows:

Q. ... What kind of car are you driving?

A. '85 Dodge Lancer.

Q. What kind of shape is that car in?

A. It's got some problems.

Q. Would you like to be able to have a more reliable car?

A. Sure.

Q. How do you get the kid to and from the sitter?

A. ... I drive him.

Q. I notice here you have a credit card payment that shows an outstanding balance of about eighteen hundred. Is that—do you run about at that level all the time?

A. Probably right around there.

Q. It doesn't show that you have any life insurance but that it is something that you would like. You have no private insurance of your own?

A. No, just through work I have a small one.

Q. You would like to be able to provide for your child, I assume, some life insurance?

A. Yes.

Q. How old is the child now?

A. Christopher is two and a half.

Q. Have you thought of the kinds of things that you would like to be able to provide for him in the future?

A. I would like to be able to take him places and just provide things that he wanted, he needed.

Q. Have you considered musical lessons or any of those kinds of things that he might in the future need or want?

. . . . .

Q. Have you considered preschool?

A. Not right now. Maybe a year or two down the road ... [.]

Both this testimony and the trial court's findings of fact are lacking statements of Christopher's needs; rather they include "vehicle payment," "eating out," "vacations," and "life insurance" as Mother's "desires to provide for the child."

We agree that these items are desirable amenities of life. However, Mother has not shown how they are "needs" for two and one-half year old Christopher. Therefore, Moth-

ance, savings, good quali[t]y clothing, eating out, a residential home, vacations, or enriching opportunities for the minor child, all items which plaintiff desires to provide for the child. 11. Defendant owns a quality home in a fashionable area of Sioux Falls, South Dakota, to which he has made substantial improvements over the last few years. He owns a vacation cabin in the Black Hills, South Dakota. He has traveled extensively, has provided financial assistance to his parents, owns late model automobiles, has substantial life insurance, and the ability to support his former wife and child who live with him in this same fashion.

12. The child's present standard of living has been dictated by the marginal earning of his mother rather than the far more substantial earnings of his father.

. . . . .

14. *Defendant is able to provide substantial support for the minor child commensurate with his standard of living.* (Emphasis added.)

. . . . .

In addition, the trial court's letter accompanying its findings of fact and conclusions of law stated: "Mr. Nelson's support obligation as calculated above, is commensurate with the *father's standard of living.*" (Emphasis added.)

er has not sustained her burden of proving what *the child's* "needs" are in this situation or how they are being neglected.

What the trial court accomplished was to give Christopher the standard of living of Father. Christopher and Mother never lived with Father. The statute explicitly states the "standard of living of the child" is to be considered when setting "an appropriate level" of support. *See* SDCL 25–7–6.9. This guarantees that the child's needs will be met. By using Father's standard of living as a guidepost in determining Christopher's support, the trial court ignored the fact that there was never any prior family relationship between Christopher and Father. The statute allows the trial court to fix child support in such amount as meets Christopher's needs, while not raising Mother's standard of living through the vehicle of child support. Effectively, the trial court in this case imposed an unauthorized obligation on the part of Father toward Mother. This award is, in essence, an alimony/palimony windfall contained in the rhetoric of child support. The circumstances should dictate the result, allowing Christopher a standard of living that he never became accustomed to would go beyond the direction of SDCL 25–7–6.9.

The majority opinion cites *Steffens,* 503 N.W.2d at 258, *Bloom,* 498 N.W.2d at 217, *Earley,* 484 N.W.2d at 128, and *Jones,* 472 N.W.2d at 785, to uphold the trial court's extrapolation. All of these cases can be factually distinguished from the case at hand— the parents in all of the above were married and the child[ren] lived with the obligor. *See Steffens,* 503 N.W.2d at 256; *Bloom,* 498 N.W.2d at 214; *Earley,* 484 N.W.2d at 126; and *Jones,* 472 N.W.2d at 783.

Without any showing of need or specific articulation of how the child's accustomed standard of living is being denied, this court cannot say that $1,733.43 per month is an "appropriate level." Following the reasoning of the majority, it appears as though Christopher would probably be in line to receive a chauffeur-driven limousine at the ripe old age of five or six. Therefore, I would remand for a determination of child support and arrearages consistent with the actual needs of Christopher.