2002 SD 99

**Thomas S. LAIRD, Plaintiff and Appellee,**

v.

**Emma French LAIRD, Defendant and Appellant.**

**No. 21998.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 11, 2002.

Decided Aug. 7, 2002.

Rehearing Denied Sept. 16, 2002.

Roger W. Damgaard of Woods, Fuller, Shultz & Smith, Sioux Falls, South Dakota, Attorneys for plaintiff and appellee.

Catherine V. Piersol and Leah Piersol Crain, Sioux Falls, South Dakota, Attorneys for defendant and appellant.

[¶ 1.] Circuit Judge JAMES W. ANDERSON sitting for Justice RICHARD W. SABERS, disqualified, delivers the majority opinion of the Court on Issues One, Two and Four.

[¶ 2.] Justice ROBERT A. AMUNDSON delivers the majority opinion of the Court on Issue Three.

[¶ 3.] JAMES W. ANDERSON, Circuit Judge, writing the majority on Issues One and Two.

[¶ 4.] Emma French Laird appeals a circuit court judgment denying her request for modification of child support. Emma also contends that the circuit court erred in denying her requested reimbursement of health insurance premiums.

## FACTS

[¶ 5.] Emma French Laird (Emma) and Thomas S. Laird (Thomas) were married for sixteen years. The parties had two children, Jonathan, born March 25, 1983 and Robert, born July 14, 1987. In July 1997 the parties entered into a stipulation and agreement of divorce (stipulation of divorce) that was adopted by the trial court. The stipulation of divorce provided for joint legal custody, with Emma having physical custody. Thomas was allowed liberal, unstructured visitation.

[¶ 6.] The stipulation of divorce also set forth several other factors. Thomas was to pay the sum of $1500 per month in child support. Thomas was also given a $250 credit on his child support payment so long as he maintained health and dental insurance. Thomas agreed to continue paying the premiums on a $200,000 life insurance policy for the benefit of the children and to maintain the boys' college funds. Thomas was also responsible for any of the children's medical expenses not covered by insurance.

[¶ 7.] Thomas was the president of Security State Bank, in Tyndall, South Dakota at the time of the divorce and Emma was a realtor. Following the divorce Thomas joined the Board of Directors of Audio Video Dimensions and moved to Plymouth, Minnesota, commuting to Tyndall a few days per week. Emma and the boys moved to Yankton, South Dakota.

[¶ 8.] The Laird family enjoyed a good standard of living in Tyndall, South Dakota prior to the divorce. The house they

lived in was worth $110,000. They belonged to the Tyndall Country Club, took family vacations, drove newer cars and owned more than one airplane.

[¶ 9.] On or about May 3, 2000 Emma commenced a motion for order of modification of child support, payment of medical bills and other post divorce matters. The motion was argued before Judge Lee Tappe on August 22, 2000. The circuit court denied Emma's motion and issued findings of fact and conclusions of law accordingly.

[¶ 10.] The circuit court found that although the parties' income is disparate each party is a millionaire in their own right. The circuit court based its decision on the 1999 adjusted gross income of the parties because the 2000 figures were speculative at best. Emma's adjusted gross income was $47,285 and Thomas' was $281,281 (included in this figure is a one time capital gain from the sale of stock for $129,300). The circuit court held that retained earnings of the bank should be taken into account in determining Thomas' total assets, but, since there was more than enough income to meet the children's needs, assets were irrelevant in calculating child support.

[¶ 11.] The parties' combined monthly income exceeds the statutory support schedule in SDCL 25-7-6.2. Based on the evidence presented the court chose not to extrapolate beyond the guidelines.

### ISSUES

[¶ 12.] Emma appeals four issues:

Whether the circuit court abused its discretion and committed reversible error by failing to include all sources of the non-custodial parent's income for purposes of determining child support.

Whether the trial court abused its discretion and committed reversible error

by characterizing the non-custodial parent's retained earnings as an asset rather than income and thereby not including them for the purpose of calculating child support.

Whether the trial court abused its discretion and committed reversible error by refusing to extrapolate beyond the child support guidelines

Whether the trial court abused its discretion and committed reversible error by refusing to order repayment of child support withheld to pay health insurance premiums which are actually paid by father's employer.

### STANDARD OF REVIEW

[¶ 13.] Findings of fact are reviewed under the clearly erroneous standard. This Court must be left with a definite and firm conviction that a mistake has been made to overturn a circuit court's findings. *Watson–Wojewski v. Wojewski*, 2000 SD 132, ¶ 13, 617 N.W.2d 666, 669–670 (citing *Billion v. Billion*, 1996 SD 101, ¶ 13, 553 N.W.2d 226, 230). Questions of law are reviewed *de novo*. *Hendricksen v. Harris*, 1999 SD 130, ¶ 7, 600 N.W.2d 180, 181.

[¶ 14.] An award of child support will not be disturbed unless the trial court clearly abused its discretion. *Watson*, 2000 SD 132 at ¶ 14, 617 N.W.2d at 670 (citing *Steffens v. Peterson*, 503 N.W.2d 254, 257 (S.D.1993)). Abuse of discretion is defined as "a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Billion*, 1996 SD 101 at ¶ 14, 553 N.W.2d at 230. The question is not would this Court have made the same decision, but "whether a judicial mind, in view of the law and circumstances of the particular case, could reasonably have reached such a conclusion." *Id.* (citing *Nelson v. Nelson*, 454 N.W.2d 533, 534 (S.D.1990)).

## ANALYSIS

### ISSUE ONE

[¶ 15.] **Whether the circuit court abused its discretion and committed reversible error by failing to include all sources of the non-custodial parent's income for purposes of determining child support.**

[¶ 16.] Stated differently, the issue is whether or not the circuit court committed reversible error by using the parties' 1999 income figures instead of using 2000 figures. Emma argues that the circuit court's use of Thomas' 1999 income was clearly erroneous. She claims that Thomas will earn significantly more income in the year 2000, than he did in 1999, while her income will remain relatively unchanged. The circuit court addressed this issue in its findings of fact. The court specifically found that, "The parties' relative adjusted gross incomes for the year 1999 shall be used for purposes of calculations in this case and not the estimated 2000 incomes. The 1999 incomes are known, while the 2000 incomes are speculative." (Finding of Fact No. 49).

[¶ 17.] The circuit court may exercise discretion in setting child support. The circuit court must consider the "reasonable needs of the child and the obligor's ability to pay." *Havens v. Henning*, 418 N.W.2d 311, 312 (S.D.1988) *(citing Gross v. Gross*, 355 N.W.2d 4 (S.D.1984)). The circuit court's findings in this case reveal that it considered the speculative nature of the 2000 income and the facts surrounding the parties' income. The circuit court did not abuse its discretion in using the 1999 incomes of the parties.

### ISSUE TWO

[¶ 18.] **Whether the trial court abused its discretion and committed reversible error by characterizing the non-custodial parent's retained earnings as an asset rather than income and thereby not including them for the purpose of calculating child support.**

[¶ 19.] Emma claims that the circuit court inappropriately excluded from Thomas' gross income his share of the bank's retained earnings. She claims that Thomas' share of the retained earnings is $4,215,215.50.

[¶ 20.] Emma characterizes retained earnings in a bank as "undivided profits." South Dakota Law defines gross income as:

> Gross income from a business, profession, farming, rentals, royalties, estates, trusts or other sources, are the net profits or gain, or net losses shown on any or all schedules filed as part of the parents' federal income tax returns. . . .

SDCL 25–7–6.6. The above statute definitely contemplates including retained earnings in gross income if they were filed as part of Thomas' federal income tax return. *Id.*

[¶ 21.] This Court has addressed retained earnings in the previous cases of *Watson*, 2000 SD 132, 617 N.W.2d 666 and in *Ochs v. Nelson*, 538 N.W.2d 527 (S.D. 1995). In *Watson*, retained earnings from a limited partnership were considered gross income for purposes of determining child support. *Watson*, 2000 SD 132 at ¶ 27, 617 N.W.2d at 672. In *Ochs* the court included in the father's income his share of a closely held corporation's retained earnings. *Ochs*, 538 N.W.2d at 529.

[¶ 22.] In this case the circuit court made numerous findings in regard to classifying retained earnings as an asset rather than income. The circuit court recognized that whether to include retained earnings in child support calculations is a highly fact specific determination. (Finding of Fact 26). The court noted that

Security State Bank in Tyndall, South Dakota is not the same as a "mom and pop" corporation as was the case in *Ochs*. (Finding of Fact 27). The court also found that banks are highly regulated industries and Thomas cannot simply write himself a check from the bank's undivided profits. (Findings of Fact 29, 30). In *Ochs*, Mr. Nelson borrowed $79,000 from the corporation and had made no payments in satisfaction of that debt. (Finding of Fact 31). The banking industry on the other hand has strict rules and regulations relating to insider transactions. *Id.* The circuit court analyzed this issue very carefully as evidenced by its detailed findings distinguishing the *Ochs* case.

[¶ 23.] In *Watson* this Court listed several factors to consider in determining whether or not retained earnings should be considered income. *Watson,* 2000 SD 132 at ¶ 32, 617 N.W.2d at 673. This Court took into consideration whether or not the earnings were held for reinvestment purposes, were reported on tax returns, and were paid as cash. *Id.*

[¶ 24.] In this case Security State Bank is made up of many shareholders and directors. (Findings of Fact 32, 33). Thomas is both a shareholder and a director of Security State Bank. *Id.* Therefore, the decision of whether to pay dividends from retained earnings is not one made exclusively by Thomas. Further, all of the bank's retained earnings are not readily available for distribution. Finally Thomas' 1999 income tax return does not list his share of the retained earnings as income rather it lists the receipt of dividends paid out by the Bank for that year.

[¶ 25.] The real question is whether Thomas can readily receive his share of the bank's retained earnings. It is apparent that he cannot. The trial court did not abuse its discretion in holding that retained earnings from the bank should be considered an asset rather than income

and that since there is enough income between the parties to support the children, assets are not relevant. SDCL 25–7–6.5.

[¶ 26.] GILBERTSON, Chief Justice, and AMUNDSON and KONENKAMP, Justices, and GORS, Acting Justice, concur.

[¶ 27.] ZINTER, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.

[¶ 28.] AMUNDSON, Justice, writing the majority on Issue Three.

ISSUE THREE

[¶ 29.] **Whether the circuit court abused its discretion by failing to extrapolate beyond the statutory child support guidelines.**

[¶ 30.] Emma argues that the circuit court erred by refusing to extrapolate beyond the statutory child support guidelines. The circuit court determined that the parties' combined monthly income did exceed the guidelines in SDCL 25–7–6.2. It, however, found that Emma failed to submit adequate proof of the children's actual needs and standard of living. Therefore, the court declined to extrapolate beyond the child support guidelines.

[¶ 31.] In *Ochs,* 538 N.W.2d at 528, we upheld an extrapolated monthly child support award of $1,456 per month, which was to be paid in addition to $288 per month in daycare. There, the father had a yearly income of $62,345 and had an 80 percent interest in a closely held corporation that had an average yearly net income of $116,345, of which $93,524 was imputed to the father to reflect his interest. *Id.* The father in *Ochs* also had a nice home, a vacation cabin in the Black Hills, and other luxuries that the mother, who made about $12,000 per year, did not. *Id.* There, we upheld the award by emphasizing the stan-

dard of living of the child and focusing on the disparities between the mother's lifestyle and the father's lifestyle. *Id.* at 530.

[¶ 32.] In *Ochs,* the two-year-old child at issue was not accustomed to his father's more-than-comfortable income, vacation home and "quality home in a fashionable area of Sioux Falls" because he never lived with the father. *Id.* at 528. His parents were never married and the mother had custody. Therefore, the child spent the vast majority of his time with his mother, who lived a far more meager lifestyle. *Id.* Still, the majority noted that children have an interest in parents' "well-to-do" living standards. *Id.* at 531.

[¶ 33.] If we fail to permit extrapolation in this case, we would be creating extremely inconsistent precedent for future child support cases. In *Ochs* we focused on creating a standard of living for a very young child who had never appreciated or become accustomed to a more lavish lifestyle. Here, we have children who are accustomed to an extremely high standard of living and who are clearly old enough to appreciate that high standard. In denying the extrapolation, the circuit court seems to emphasize the fact that the children have such luxuries as colored televisions in their bedrooms and college savings accounts, but that should not prevent extrapolation. Merely because the mother in this case has a more luxurious lifestyle than the mother in *Ochs* does not mean we should cast aside the emphasis on maintaining the standard of living to which the children are accustomed.

[¶ 34.] We should not create a higher standard of living for a child in one case,

then approve a lesser standard of living in another. Here, the father obviously has greater financial ability to pay for the lifestyle he helped establish for these children than the father did in *Ochs.*

[¶ 35.] Because of the precedent established in *Ochs,* we reverse issue three and remand to the trial court for proceedings consistent with this opinion.

[¶ 36.] KONENKAMP, Justice, and GORS, Acting Justice, concur.

[¶ 37.] GILBERTSON, Chief Justice, dissents.

[¶ 38.] ANDERSON, James W., Circuit Judge, dissents without a writing.

[¶ 39.] ANDERSON, James W., Circuit Judge, writing the majority on Issue Four.

## ISSUE FOUR

[¶ 40.] **Whether the trial court abused its discretion and committed reversible error by refusing to order repayment of child support withheld to pay health insurance.**

[¶ 41.] Since the divorce, pursuant to the parties' stipulation of divorce Thomas has been receiving a $250 credit toward his obligation to pay for the children's health insurance. Emma argues the credit was inappropriate since the bank rather than Thomas is making the payment.[1] Emma asks for reimbursement of the money withheld and interest thereon.

[¶ 42.] The circuit court found that "the Stipulation does not require Tom to pay the costs of health and dental insurance out of his pocket; it does require him to

---

1. The parties stipulation of divorce on this issue states as follows:

   Plaintiff [Tom] shall pay to the Defendant [Emma] commencing August 1, 1997, the sum of $1500.00 per month as child support until his child support obligations cease or otherwise modified by statute or

case law. Plaintiff shall be given credit in the amount of $250.00 per month as long as he maintains the health and dental insurance and if, in fact, such costs remain at $250 per month. Said credit shall be reviewed on a periodic basis.

maintain the insurance however." (Finding of Fact 62). Thomas has upheld his end of the bargain by remaining employed at Security State Bank. (Finding of Fact 63). Both parties knew the bank was paying for the health insurance on Thomas' behalf when they entered into the stipulation of divorce. (Finding of Fact 70).

[¶ 43.] The stipulation of divorce was agreed upon by the parties and adopted by the court. "In determining the proper interpretation of an agreement incorporated into a divorce decree, a court must seek to ascertain and give effect to the intention of the parties." *Culhane v. Michels*, 2000 SD 101, ¶ 19, 615 N.W.2d 580, 587 (citing *Kier v. Kier*, 454 N.W.2d 544, 547 (S.D.1990)).

[¶ 44.] The stipulation of divorce shows the parties intended that Thomas only "maintain" health insurance. It does not specify that he pay for the insurance "out-of-pocket." This intention is further shown by the fact that Emma knew the bank paid for the insurance while they were married. In fact, she testified she assumed the bank paid for all of the health and dental insurance during the marriage. The circuit court did not abuse its discretion in refusing to award reimbursement of the $250 per month credit to Emma.

[¶ 45.] GILBERTSON, Chief Justice, and AMUNDSON and KONENKAMP, Justices, and GORS, Acting Justice, concur.

[¶ 46.] GILBERTSON, Chief Justice, dissents on Issue Three.

GILBERTSON, Chief Justice (dissenting).

[¶ 47.] As her third issue, Emma contends that the trial court committed reversible error when it failed to extrapolate beyond the child support guidelines. She claims that the trial court understated the children's pre-divorce standard of living. She also argues, in the alternative, that even if their pre-divorce standard of living has been maintained, a lack of increase in the support payment precludes the children from enjoying their father's post-divorce success. Thus, this case is not about maintaining the children's pre-divorce lifestyle; it is about increasing their lifestyle commensurate with the non-custodial parent's post-divorce success. Because there is no basis in South Dakota law to support such a holding, I dissent.

[¶ 48.] The circuit court made several findings on this issue. The court found that although the parties' income is disparate, they both are millionaires in their own right. (Findings of Fact 18, 21). The parties' combined monthly income exceeds the guidelines in SDCL 25–7–6.2. (Finding of Fact 35). Emma has the burden of proving the children's actual needs and their standard of living, as she is the one seeking modification. (Finding of Fact 36). Emma failed to meet her burden of proof because she did not submit a monthly budget for the boys, nor did she differentiate between items solely for the benefit of the children and those items exclusively for her enjoyment. (Findings of Fact 54, 55).[2]

[¶ 49.] Jonathan and Robert enjoy a healthy and comfortable standard of living. The boys live in a $100,000 home. They each have their own bedroom. They each have a computer, stereo, color TV and VCR. Emma owns a 1999 Dodge Durango, free of any liens, to transport the boys. Both boys have college accounts, Jonathan's totaling $150,000 and Robert's total-

---

**2.** Emma did introduce a list of things the children wanted, including: (1) replacement of a $100,000 home with a $300,000 home; (2) new furniture for the kids; (3) a reserve for computers, cars and sports equipment; (4) a curio for family heirlooms; (5) a new stereo; (6) a new camcorder; and (7) recurring monthly expenses in the amount of

ing $100,000. Thomas maintains life insurance naming the boys as beneficiaries. There is no dispute that the boys are adequately clothed and fed. The children continue to travel, attend camps, and participate in activities such as basketball, swimming, and drama.

[¶ 50.] The circuit court, in issuing new support obligations, calculated Thomas' child support at $1800 per month.[3] Thomas also has the burden of maintaining health and dental insurance on both boys through their graduation from high school at a cost of $650 per month. Since Thomas' employer pays for this insurance, he does not receive a credit for it. Thomas is responsible for eighty-seven percent of all medical bills not covered by insurance until the boys graduate from high school. This cost is estimated at $3,045 per year ($3,500 times eighty-seven percent). As previously mentioned, Thomas also maintains a $200,000 life insurance policy on himself, in which the boys are named as joint beneficiaries, at a cost of $200 per month. Thomas is responsible for eighty-seven percent of all car-related costs for Robert. Thomas is required to take the boys on a seven-day vacation each year until they graduate from high school. This cost is estimated at $3,000 per year. Thomas must also furnish transportation for the boys to Minneapolis for as many weekends as they want, taking them to whatever sporting and cultural events they desire. This cost is estimated at $2,000 per year. Thomas must also continue to manage the boys' college accounts free of charge.

[¶ 51.] The circuit court has the obligation to establish child support, "at an appropriate level, taking into account the actual needs and standard of living of the child." SDCL 25–7–6.9. It is the custodial parent's burden to prove "his or her claimed expenses reflect the *child's* needs and standard of living." *Watson,* 2000 SD 132 at ¶ 20, 617 N.W.2d at 671 (emphasis original) (citing *Ochs,* 538 N.W.2d at 530). There is, however, no provision for increasing a child's standard of living to keep up with the non-custodial parent's post-divorce success. Moreover, when the combined monthly income of both parents exceeds the child support guidelines, "extrapolation beyond the maximum guideline level is permissible, but not obligatory[.]" *Ochs,* 538 N.W.2d at 530.

[¶ 52.] This Court's reallocation of parental assets amounts to nothing more than *de facto* alimony. SDCL 25–7–6.9 cannot act as "an alimony/palimony windfall contained in the rhetoric of child support." *Id.* at 533 (Amundson, J., concurring in part and dissenting in part). In *Billion,* this Court held the fact that a custodial parent may indirectly benefit does not justify denial of child support to children whose actual needs and standard of living are not being met. *Billion,* 1996 SD 101 at ¶ 44, 553 N.W.2d at 236. But Emma was unable to demonstrate that her sons' standard of living was not being maintained. While it is permissible for children to enjoy *some* of their father's high standard of living, the law does not mandate that they enjoy *all* of it. *Evans v. Evans,* 1997 SD 16, ¶ 16, 559 N.W.2d 240, 244.

[¶ 53.] Emma's evidence failed to reflect the needs of the children. She failed

$2,370 above and beyond expenses of food, clothing or shelter. The circuit court determined that these items were not actual needs of the children and were not necessary to maintain their standard of living.

3. This was calculated by taking the top of the chart amount under SDCL 25–7–6.2 for two children, $2,049.00, multiplying it by eighty-seven percent, which is Emma's percentage recommendation, and rounding up to $1800.

to make a monthly budget depicting the children's expenses. She also failed to distinguish between the needs of the children and her needs. *See Watson,* 2000 SD 132 at ¶ 22, 617 N.W.2d at 671. The circuit court made detailed findings regarding the children's pre-divorce and current standard of living. The circuit court further made detailed findings in computing Thomas' child support obligation. It is clear from these findings that the children's pre-divorce standard of living will be maintained, if not exceeded, and the children will share in many of the fruits of Thomas' labor. Since Emma failed to meet her burden of proof and the children's actual needs and standard of living are being adequately met, the trial court did not abuse its discretion in refusing to extrapolate beyond the child support guidelines. Accordingly, I dissent from the majority opinion on this issue.