#24253-r-JKM

**2007 SD 44**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

LONNIE RAY McKITTRICK,                                    Plaintiff and Appellant,

   v.

WANDA LYNN McKITTRICK,                                   Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

HONORABLE MAX A. GORS
Judge

* * * *

LINDA LEA M. VIKEN of
Viken Law Firm                                           Attorney for plaintiff
Rapid City, South Dakota                                 and appellant.

JOHN R. VON WALD of
Von Wald Law Offices                                     Attorney for defendant
Selby, South Dakota                                      and appellee.

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 13, 2007

OPINION FILED **04/25/07**

MEIERHENRY, Justice

[¶1.] Lonnie McKittrick appeals a child support order recommended by a child support referee and affirmed by the circuit court. As part of a 2004 divorce settlement agreement, Lonnie and Wanda McKittrick set the terms of the custody and child support obligations of their minor child, Parker. Less than three years later, Wanda sought an increase in child support. The child support referee increased Lonnie's monthly support obligation and extrapolated above the child support schedule. The circuit court affirmed and we reverse.

## FACTS

[¶2.] The parties stipulated in a divorce agreement to share joint legal custody of their minor child, Parker. Wanda had primary physical custody; Lonnie had liberal visitation. The parties agreed that Lonnie would pay $1,000.00 per month child support beginning January 1, 2004, maintain Parker's health insurance, pay 88% of Parker's uncovered health costs over $250.00, pay 88% of Parker's extracurricular activity expenses and establish a college fund for the child.[1]

[¶3.] Disputes arose over the payment of expenses. The first dispute arose when Wanda asked Lonnie to pay for travel and lodging expenses for her and her sister when they attended one of Parker's out-of-town athletic events. Lonnie claimed that he was only responsible for Parker's extracurricular expenses not for

---

1. The stipulation provided for alimony of $1,000.00 per month for fifteen years irrespective of cohabitation, remarriage or Lonnie's death. Wanda also received $55,000.00 as property settlement.

Wanda's lodging. The second dispute involved expenses for a dog Lonnie purchased for Parker. Before purchasing the dog, Lonnie and Wanda agreed that the dog could live at Wanda's home if Lonnie paid for the dog's food, neutering, and shots. When other dog-related costs arose, Lonnie only agreed to pay a pro-rata share of 88%. Wanda wanted 100% reimbursement.

[¶4.] Subsequently, Wanda petitioned to modify child support on March 20, 2006. At the modification hearing, the child support referee determined that Wanda's net monthly income was $2,424.00 and Lonnie's net monthly income was $20,868.00 for a combined net monthly income of $23,292.00.[2] Since Lonnie and Wanda's combined net monthly income of $23,292.00 exceeded the child support schedule's top income level of $10,000.00, see SDCL 25-7-6.2, the referee set child support above the schedule. The referee determined that the parties' combined net monthly income exceeded the top level of the schedule by a multiple of 2.3, that is, their combined income of $23,292.00 was 2.3 times $10,000.00. The referee then multiplied 2.3 times the top level of child support for one child to arrive at $3,340.00 (2.3 X $1,452.00 = $3,340.00). Since Lonnie's income constituted 90% of the combined income, the referee set Lonnie's child support obligation at $3,006.00 (90% of $3,340.00).[3] Lonnie objected to the referee's report. The circuit court

---

2. Wanda earned $922.06 bi-weekly as an employee at the Oahe Child Development Center in Pierre, South Dakota. Her income from a part-time job at Mesaba Aviation was not included in the child support calculations. Lonnie worked as a health insurance division manager with Fischer, Rounds & Associates in Pierre, South Dakota.

3. This represented 14.2% of Lonnie's net income.

affirmed and adopted the referee's findings of fact and conclusions of law. Lonnie

appeals and raises the following issues:

## ISSUES

1. Whether it was err to increase Lonnie's child support without a showing of a substantial change in circumstances.
2. Whether it was err to extrapolate upward from the child support schedule without a showing of the child's actual needs and standard of living.

## STANDARD OF REVIEW

[¶5.]     This Court reviews findings of fact under the clearly erroneous

standard. Laird v. Laird, 2002 SD 99, ¶13, 650 NW2d 296, 299; Watson-Wojewski

v. Wojewski, 2000 SD 132, ¶13, 617 NW2d 666, 669-70. To overturn a circuit court's

findings, there must be a definite and firm conviction that a mistake has been

made. Laird, 2002 SD 99, ¶13, 650 NW2d at 299. Questions of law are reviewed de

novo. Id.

[¶6.]     "An award of child support will not be disturbed unless the trial court

clearly abused its discretion. An abuse of discretion is defined as 'a discretion

exercised to an end or purpose not justified by, and clearly against, reason and

evidence.'" Laird, 2002 SD 99, ¶14, 650 NW2d at 299 (citing Billion v. Billion, 1996

SD 101, ¶13, 553 NW2d 226, 230).

## ANALYSIS

*1. SDCL 25-7-6.13 vs. SDCL 25-7A-22(1)*

[¶7.]     The threshold question is whether Wanda must show a substantial

change in circumstances in order to obtain an increase in child support. Generally,

a child support order may not be modified without a showing of substantial change

in circumstances if the request is filed within three years from the date of the prior child support order. SDCL 25-7A-22 (1).[4] The Legislature, however, waived the change of circumstances requirement when it revised the child support schedule, under SDCL 25-7-6.2, and provided as follows: "All orders for support entered and in effect prior to July 1, 2005, may be modified in accordance with this chapter without requiring a showing of a change in circumstances from the entry of the order."[5] SDCL 25-7-6.13. Lonnie argues Wanda should be required to show a substantial change in circumstances. His rationale is that the 2005 changes to the child support schedule did not affect his child support obligation because no changes were made to the upper levels of the schedule. Specifically, the maximum income level of $10,000.00 along with the commensurate support obligation did not change. He argues that SDCL 25-7-6.13 only applies if, after applying the revised schedule, the amount of child support, owed by a parent, changes. Lonnie relies on comments

---

4.    SDCL 25-7A-22 provides, in part:

> If the support order was entered in this state and this state maintains continuing exclusive jurisdiction over the support order in accordance with chapter 25-9B, or if the support order was registered in this state and the requirements of § 25-9B-611 or 25-9B-613 are satisfied, an obligor, an obligee, or the assignee may file a petition, on forms prescribed by the department, to increase or decrease child support. For any support order entered or modified after July 1, 1997:

> (1) The order may be modified upon showing a substantial change in circumstances if the petition is filed within three years of the date of the order; or
> (2) The order may be modified without showing any change in circumstances if the petition is filed after three years of the date of the order.

5.    The child support order was entered on February 2, 2004.

in the *Report of the South Dakota Commission on Child Support*, which indicated that the purpose of SDCL 25-7-6.13 was to allow a parent affected by the revisions to seek modification without showing a change in circumstances.

[¶8.] Although Lonnie's argument seems reasonable, we are bound by the plain meaning of the statute which clearly directs that "all" prior support orders "may be modified . . . without a showing of a change in circumstances." SDCL 25-7-6.13; *Reider v. Schmidt*, 2000 SD 118, ¶9, 616 NW2d 476, 479 (stating that this Court may not resort to a report by the South Dakota Commission on Child Support unless the statute is found ambiguous and some interpretation is required). "When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed." *Anderson v. City of Tea*, 2006 SD 112, ¶5, 725 NW2d 595, 597 (additional quotations and citations omitted). Consequently, the referee did not err when he considered the child support modification without a showing of substantial change in circumstances.

*2. Calculating Child Support Above the Schedule*

[¶9.] Lonnie argues that the referee and circuit court erred by setting his child support obligation by extrapolating above the schedule without a showing of the child's actual needs and standard of living. We agree. Our analysis begins with a review of the changes to the upper levels of the schedule beginning in 1997.

[¶10.] Prior to 1997, the upper level of the schedule, under SDCL 25-7-6.2, topped at $4,000.00. In 1997, the Legislature increased the top level from $4,000.00 to $10,000.00. SD Sess Laws 1997 ch 154, § 6. In recommending the 1997 increase,

the South Dakota Commission on Child Support (the Commission) reported that the increase would allow more uniformity since more families would fall within the guidelines.[6] Report of the South Dakota Commission on Child Support 15 (1997). The Commission noted that there was "insufficient economic data available relating to child rearing expenditures above [the $10,000.00] income level." *Id.* Thus, the Commission recommended that "[a]bove the $10,000 income level, child support should continue to be based upon the actual needs and standard of living of the child." *Id.* The Commission concluded that "Policy Studies indicate that straight extrapolation is not appropriate. Economic studies indicate that the proportion of net income spent on children declines as income increases." *Id.* In adopting the Commission's recommendations, the Legislature left intact the requirement that child support above the schedule be based on the "actual needs and standard of living of the child." SDCL 25-7-6.9. The statute provides:

---

6. The Commission's report provided the following comment:

> The South Dakota Supreme Court has approved straight extrapolation above the current guidelines. It is not, however, mandatory to extrapolate. Policy Studies indicate that straight extrapolation is not appropriate. Economic studies indicate that the proportion of net income spent on children declines as income increases. A review of South Dakota's existing guidelines by Policy Studies reveals that the current guidelines may be too high at the upper income levels because of South Dakota's previous reliance on Epenshade's estimate.

> By raising the guidelines to $10,000, more families will fall within the guidelines, and more uniformity in establishing obligations will naturally occur. The Commission does not recommend that the guidelines exceed $10,000 because there is insufficient economic data available relating to child rearing expenditures above this income level. Above the $10,000 income level, child support should continue to be based upon the actual needs and standard of living of the child(ren).

> For a combined net income above the schedule in § 25-7-6.2, the child support obligation shall be established at an appropriate level, taking into account the actual needs and standard of living of the child.

*Id.* The Commission reviewed the schedule in 2000 and 2005 but recommended no change to the upper level of the schedule.

[¶11.] Notably, South Dakota's child support statutes have never recognized extrapolation as an appropriate method of calculating support above the schedule. SDCL 25-7-6.9 (enacted in 1989); Bloom v. Bloom, 498 NW2d 213, 217 (SD 1993) (citing Earley v. Earley, 484 NW2d 125, 127-28 (SD 1992) (stating that *Earley* yielded the rule that the trial court *may* calculate support obligations by mathematical extrapolation where proof exists of the actual needs and standard of living of the child)). In fact, straight extrapolation is at odds with the language of SDCL 25-7-6.9. Black's Law Dictionary defines extrapolate as "to estimate an unknown value or quantity on the basis of the known range, esp. by statistical methods." Black's Law Dictionary 607 (8th ed 2004). Thus, to extrapolate above the child support schedule is to estimate a child support amount based on the known ranges or amounts in the schedule. The extrapolated estimate, however, may be skewed. As the Commission pointed out, current studies show that the needs of a child do not increase at the same rate that family income increases once the monthly net income reaches $10,000.00. Thus, the Legislature capped the schedule at $10,000.00 and based child support above the schedule on the child's actual needs and standard of living. Using straight extrapolation or some other statistical or mathematical formula is contrary to the plain meaning of the statute and may not reflect the child's actual needs and standard of living.

#24253

[¶12.] Since the 1997 schedule change, we have only reviewed two child support cases where the parents' combined income exceeded $10,000.00.[7] *Laird,* 2002 SD 99, 650 NW2d at 296 (examining the standard of living of the child prior to the parents' divorce); *Watson-Wojewski,* 2000 SD 132, 617 NW2d at 666 (remanding for specific findings as to child's actual needs and standard of living). Neither of these cases should be read to approve of straight extrapolation above the schedule. *Watson-Wojewski v. Wojewski* is particularly instructive. *Id.* There, the circuit court extrapolated above the child support schedule and set child support at $4,200.00 per month. *Id.* ¶19. Although the custodial parent submitted a budget showing monthly expenses, the parent failed to prove which expenses were allocated to the child. *Id.* Consequently, we reversed because we could not ascertain the basis of the support amount. *Id.* On remand, we directed the court to focus on "the *child's* needs and standard of living." *Id.* ¶20 (emphasis in original). We said that "[t]he custodial parent has the burden of proving that his or her claimed expenses reflect the child's needs and standard of living," not the custodial parent's needs. *Id.* We also noted the necessity of adequate findings of facts in order to render a meaningful review. *Id.* ¶¶17, 24. We reversed because the record lacked the required proof or adequate findings of facts. *Id.* ¶24.

[¶13.] The same deficiency appears in the case before us. Wanda presented no evidence and the referee made no findings of Parker's actual needs or standard of living. Wanda's proof centered on her recent dispute with Lonnie about

---

7.   Cases decided prior to the 1997 change in the maximum income level are of questionable precedent to the issue of extrapolation.

reimbursement for her travel expenses to Parker's sporting event and her dog-care expenses. The only reference to the child's needs and standard of living in the referee's findings appeared as follows:

> The recommended child support amount represents 14.3% of Lonnie's net income, and is a significant amount of money. The testimony established, however, that Parker is engaged in a number of activities with the support of his father, who attends these activities in many instances. He has also provided him things such as a hunting dog for which $1,000 was paid and which costs a certain amount of money to properly maintain. As Parker grows older, his tastes will become more expensive, his activities will continue to become more extensive and expensive, and he will face the prospect of higher education.
>
> The extrapolated support value should not be used without regard to the child's needs and standard of living. The increased child support offers the prospect of supporting Parker's lifestyle, reducing the tension between the parents who do not agree upon reimbursement for some of these activities, and providing for the expense of many activities in which Parker is engaged.
>
> SDCL 25-7-6.10(6) would be a factor, but it appears that the agreement between the parents regarding Lonnie's payment of 88% of extracurricular activity expenses is becoming problematic. Lonnie did not want to pay Wanda for her sister to go shopping on one of Parker's road trips, and he didn't realize that he would have to pay all costs and expenses associated with the dog that he gave to Parker. A fixed amount upon which all parties can rely should eliminate the disagreements and unpaid bills that have potential for stress in the future, to the child's detriment. The revised support would supersede the terms of the stipulation relating to payments for activities, pet needs and the like.

[¶14.] Although the referee recognized he should consider the child's needs and standard of living, he failed to do so. The referee generally referred to the "prospect" of supporting Parker's future activities and educational needs; however, Wanda had not presented evidence that these needs were unfunded. In fact, the parties had provided for these needs in their divorce stipulation. Lonnie agreed to

pay 88% of Parker's extra-curricular activities and establish a college savings fund. However, the referee set a fixed amount of support and eliminated the stipulated agreement provisions as to extra-curricular expenses and college savings.[8]

[¶15.]     The referee's rationale for increasing the child support and eliminating the agreement provisions was to reduce the conflict between Lonnie and Wanda. The referee stated that "the increased child support offers the prospect of. . . reducing tension between the parents who do not agree upon reimbursement of some of these activities."  Although trying to reduce conflict between divorced parents is an admirable goal, it has little to do with setting an appropriate amount for child support.  The focus when setting appropriate child support above the schedule must be on the child's actual needs and standard of living.  SDCL 25-7-6.9; *see also Bloom*, 498 NW2d at 217-18.

[¶16.]     Here, Wanda failed to provide the referee with sufficient evidence of Parker's actual needs or standard of living.  Her limited testimony about Parker's standard of living centered on the vacations she and Parker had taken since the divorce, including trips to New York, Minneapolis, the Bahamas, and Europe.[9]

---

8.     On appeal, Lonnie claimed that the referee and circuit court erred by modifying the parties' divorce agreement.  However, he failed to cite any authority to support his claim and admitted in his reply brief that a circuit court has authority to modify a child support agreement.  We have consistently held that failure to cite authority waives the issue.  Chapman v. Chapman, 2006 SD 36, 713 NW2d 572; State v. Pellegrino, 1998 SD 39, ¶22, 577 NW2d 590, 599 (quoting State v. Knoche, 515 NW2d 834, 840 (SD 1994); State v. Dixon, 419 NW2d 699, 701 (SD 1988)).

9.     Wanda receives free air travel due to her part-time employment with Mesaba.

When asked whether Parker's lifestyle had decreased since the divorce, Wanda responded, "No, because I try to keep it that way." Lonnie agreed with Wanda that Parker's lifestyle had not diminished since the divorce. The record reflects no other evidence of Parker's actual needs or standard of living concerns.

[¶17.] Wanda had the burden of showing that the child support sought reflected Parker's actual needs and standard of living. *See Watson-Wojewski*, 2000 SD 132, ¶20, 617 NW2d at 671. Wanda failed to meet that burden. Furthermore, the referee's findings of fact and conclusions of law supporting the child support increase bore no relationship to Parker's actual needs and standard of living. The child support increase merely relied on a mathematical formula based on the schedule's upper level and the parties' combined monthly net income. Consequently, the circuit court abused its discretion when it adopted the referee's recommended child support amount.

*3. Appellate Attorney Fees*

[¶18.] Wanda and Lonnie both filed motions for appellate attorney fees accompanied by itemized statements of expenses. "To determine whether attorney fees are proper in domestic relation cases, we consider, 'the property owned by each party, the relative incomes, the liquidity of the assets and whether either party unreasonably increased the time spent on the case.'" Dejong v. Dejong, 2003 SD 77, ¶30, 666 NW2d 464, 471 (quoting Peterson v. Peterson, 434 NW2d 732, 738 (SD 1989) (additional citations omitted). Considering these factors under the facts of this case, we determine that each party shall be responsible for their own attorney fees.

#24253

[¶19.]     Reversed.

[¶20.]     GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.